UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| KIM M. INDORANTO, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | CAUSE NO.: 2:02-CV-9-TS |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
|     Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on the Plaintiff's Application for Attorney's Fees Under the Equal Access to Justice Act [DE 29], filed on October 25, 2004.

**BACKGROUND**

The Plaintiff, Kim M. Indoranto, sought judicial review of the final decision of the Defendant, the Commissioner of the Social Security Administration, in which the Plaintiff was denied disability insurance benefits under the Social Security Act. On June 18, 2003, the Court denied the Plaintiff's request to reverse the Commissioner's decision and affirmed the decision of the Social Security Administration. On August 18, 2003, the Plaintiff filed her Notice of Appeal. On June 29, 2004, the Seventh Circuit reversed the order of this Court and remanded the cause for a new hearing. The court of appeals determined that the Administrative Law Judge (ALJ) did not consider all of the Plaintiff's documented impairments and that the ALJ's credibility determination was premised on flawed logic and not supported by substantial evidence. The Seventh Circuit's Notice of Issuance of Mandate was filed in this Court on August 24, 2004. On October 25, 2004, the Plaintiff applied for attorney's fees under the Equal Access to Justice Act (EAJA) and requested

the Court to enter final judgment. The Plaintiff argued that she was entitled to fees because the Commissioner's position was not "substantially justified." On December 6, 2004, the Defendant responded to the request for fees arguing that its position was substantially justified and, in the alternative, that the requested fees were excessive. On December 29, the Plaintiff replied in support of her application for fees.

On July 18, 2005, the Court remanded the matter to the ALJ for a new hearing and entered final judgment for the Plaintiff.

## DISCUSSION

The Plaintiff requests fees and costs under the EAJA, 28 U.S.C. § 2414. Section 2414(a) provides for an award of costs to a "prevailing part in a civil action." The Defendant does not dispute that the Plaintiff is a prevailing party entitled to recover costs for $262.46.

The Defendant submits, however, that the Plaintiff is not entitled to an award of attorney's fees because the Commissioner's position was substantially justified. The EAJA mandates an award of attorney's fees to a "prevailing party" in a civil action against the United States where the government's position was not "substantially justified," and no "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1). In the alternative, the Defendant contends that the requested fees are excessive.

### A. Substantially Justified

The Commissioner bears the burden of showing that the government's position was substantially justified. *See Jackson v. Chater*, 94 F.3d 274, 278 (7th Cir.1996); *Marcus v. Shalala*,

2

17 F.3d 1033, 1036 (7th Cir. 1994). The government's position was "substantially justified" if it had a reasonable basis both in law and fact. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The position must be "justified to a degree that could satisfy a reasonable person." *Id.* at 565. The Commissioner's position must be stronger than merely non-frivolous. *Id.* at 565–66. On the other hand, the Commissioner's position need not have been correct. *Jackson*, 94 F.3d at 278 (quoting *Pierce*, 487 U.S. at 566 n.2). Substantially justified does not mean justified to a "high degree" and that standard is satisfied if there is a "genuine dispute" or if reasonable persons could differ as the appropriateness of the contested action. *Stein v. Sullivan*, 966 F.2d 317, 320 (7th Cir. 1992).

"EAJA fees may be awarded if either the government's pre-litigation conduct or its litigation position are not substantially justified. However, the district court is to make only one determination for the entire civil action." *Marcus*, 17 F.3d at 1036. "Thus, fees may be awarded in cases where the government's prelitigation conduct was not substantially justified even though its litigating position may have been substantially justified and vice versa. In other words, the fact that the government's litigating position was substantially justified does not necessarily offset prelitigation conduct that was without a reasonable basis." *Marcus*, 17 F.3d at 1036. A decision by an ALJ constitutes part of the agency's pre-litigation conduct. *Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir. 2004) (citing *Sutton v. Chater*, 944 F. Supp. 638, 639 (N.D. Ill. 1996)).

The Seventh Circuit has set forth a three-part standard for reviewing EAJA petitions. *United States v. Hallmark Construction Co.*, 200 F.3d 1076, 1080 (7th Cir. 2000). The government must show that its position was grounded in: (1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the legal theory propounded. *Id.*; *see also Golembiewski*, 382 F.3d at 724.

When the Court of Appeals reverses a decision of the Commissioner, as it did here, the district court should analyze the actual merits of the government's litigating position. *Golembiewski,* 382 F.3d at 724; *Hallmark Construction*, 200 F.3d at 1079. "Strong language against the government's position in an opinion discussing the merits of a key issue is evidence in support of an award of EAJA fees." *Golembiewski*, 382 F.3d at 724 (citing *Marcus*, 17 F.3d at 1038).

Here, the Court of Appeals determined that a new hearing was necessary for two reasons: the ALJ failed to consider all of the Plaintiff's documented impairments; and the ALJ's rationale for discrediting the Plaintiff's testimony that she lies down and takes three hot baths a day to alleviate pain and muscle spasms was not supported by substantial evidence.

**(1)** *Failure to Consider All of the Plaintiff's Impairments*

The Court of Appeals stated that the ALJ had evidence before him, in the form of the Plaintiff's testimony and doctors' reports containing her complaints, that pertained to the Plaintiff's headaches and blurred vision, but that discussion of these was "notably absent from the ALJ's order." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004).

The Defendant argues that because the ALJ need not discuss every piece of evidence in the record, it had a reasonable legal basis for propounding the theory that the ALJ's decision was adequately articulated given the available medical facts related to the Plaintiff's headaches and blurred vision. This argument, however, discounts the fact that the ALJ must confront evidence that does not support his conclusion and explain why it was rejected. *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003). Thus, even if the ALJ would have been justified in rejecting the evidence regarding headaches and blurred vision on the basis of the evidence before him, his failure to

4

confront the evidence was error.

Moreover, it is well established that if the ALJ relies on testimony from a vocational expert, the hypothetical question he poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record. *See Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004) (finding that where the hypothetical does not include all of the applicant's limitations, there must be some evidence in the record indicating that the vocational expert knew the extent of the applicant's limitations); *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir.2002) (noting that it is important for the vocational expert to understand the full extent of the applicant's disability so that the expert does not declare the applicant capable of undertaking work in the national or local economy that the applicant cannot truly perform). The ALJ did not include headaches or blurred vision in the list of work-related impairments submitted to the VE. In response to the Commissioner's argument that these impairments were incorporated into the ALJ's questions to the VE because he was instructed only to consider jobs that allowed for low levels of concentration, the court held that "concentration is not the same thing as vision, and one wonders how someone with daily episodes of blurred vision could perform jobs suggested by the VE, such as cashier or an assembler, which would require attention to visual detail." *Indoranto*, 374 F.3d at 474.

The Court finds that the Commissioner's position was not substantially justified as it relates to the ALJ's consideration of the Plaintiff's impairments because clearly established precedent required the ALJ to address the evidence that the Plaintiff suffered from headaches and blurred vision and include these impairments in its hypothetical to the VE. The Seventh Circuit rejected the Commissioner's defense of the ALJ's decision in strong terms.

5

**(2)** *Credibility Determination*

The Court of Appeals held that the ALJ's rationale for not crediting the Plaintiff's testimony that she lied down and took three baths every day to alleviate pain was "premised on flawed logic" and "not supported by substantial evidence." *Indoranto*, 374 F.3d at 474, 475.

The Commissioner argues that the ALJ did not fail to discuss credibility altogether or offer merely a conclusory statement on credibility. *Cf. Golembiewski,* 382 F.3d at 724 (finding that the government's position was not substantially justified where "the body of the ALJ's decision contained no discussion of credibility"). The Commissioner contends that the ALJ identified inconsistencies in the evidence that detracted from the Plaintiff's credibility, pointing to specific pieces of medical evidence and noting that the minimal abnormalities did not corroborate the Plaintiff's allegations of pain. It notes also that the issue before the ALJ was whether it was medically necessary for the Plaintiff to take three baths a day in order to function, not whether doing so made her feel better.

Looking to the merits of the government's litigating position, the Court finds that the Court of Appeals opinion diminishes the viability of the Commissioner's position in defense of the ALJ, both on a factual and legal basis. The appellate court wrote, "The record is replete with evidence of the severe pain [the Plaintiff] was suffering as a result of herniated discs and numerous other aliments. She testified in detail about how her pain severely limited her daily activities, and there is nothing incredible or inconsistent about her statements that she lies down and take baths during the day to alleviate her pain." *Indoranto*, 374 F.3d at 474. Moreover, even if these remedies were not ordered by a doctor, as the ALJ noted, an "ALJ cannot reject a claimant's testimony about limitations on her daily activities solely by stating that such testimony is unsupported by the medical

6

evidence." *Id.* (citing *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000)).

The ALJ's errors did not result from consideration of a novel legal issue or one on which the courts have provided conflicting opinions, but on the misapplication of established law. *See Golembiewski*, 382 F.3d at 724 (finding that the appellate court's decision "does not reveal a complex case, but one in which the ALJ and Commission violated clear and long judicial precedent and violated the Commissioner's own Ruling and Regulations"). The Court of Appeals did not "reject any issue raised by the plaintiff on appeal nor did [it] adopt or affirm any position taken by the Commissioner." *Id.* Just as the Commissioner could not show that her position was substantially justified in *Golembiewski*, neither can she meet the burden in this case.

**B. Amount of Fees**

Having determined that the Plaintiff is entitled to EAJA fees, the Court will address the Plaintiff's Fee Application and the Commissioner's objections.

The award of the attorney's fees is entrusted to the court's sound discretion. *Mercer v. Espy*, 883 F. Supp. 300, 302 (N.D. Ind. 1995). "The party requesting fees has the burden of substantiating the reasonableness of the hours expended and the hourly rate." *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 518 (7th Cir. 1993) (citing *Estate of Borst v. O'Brien*, 979 F.2d 511, 515 (7th Cir. 1992). In *INS v. Jean*, 496 U.S. 154 (1990), the Supreme Court indicated that the district court's task of determining what fee is reasonable under the EAJA is essentially the same as that described in *Hensley v. Eckerhart*, 461 U.S. 424 (1983). *Jean*, 496 U.S. at 161. Under *Hensley*, the starting point for determining the amount of a reasonable fee is the lodestar, which is the number of hours reasonably expended by counsel multiplied by a reasonable hourly rate. *Hensley*, 461 U.S. at 433;

7

see also *City of Riverside v. Rivera*, 477 U.S. 561, 568 (1986).

The Plaintiff seeks an increase in the statutory maximum rate of $125 based on the Consumer Price Index for Chicago. She seeks $146.25 for work performed in 2001–2001, $147.50 for work performed in 2003, and $148.75 for work performed in 2004, which represents the cost of living adjustment allowed by the statute, 28 U.S.C. § 2412(d)(2)(A)(ii). The Plaintiff also requests recovery at $95 per hour for law clerk time. The Plaintiff asserts that 100.80 hours of attorney time and 22.25 hours of law clerk hours are recoverable, for a total fee of $17,286.21 (including $262.46 in costs).

The Commissioner does not contest the hourly rates, but argues that the requested fees are excessive because the attorneys did not make a good faith effort to exclude excessive, redundant, and unnecessary tasks.

**(1) *General Objections Warranting a Percentage Deduction in Fees***

The party requesting attorney's fees bears the burden of substantiating the reasonableness of the hours sought. *See Moore v. Univ. of Notre Dame*, 22 F. Supp. 2d 896, 908 (N.D. Ind. 1998). "Counsel . . . should . . . exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary. . . . Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

The Commissioner argues that the 101.35 hours counsel, including the student law clerk, spent pursuing the Plaintiff's appeal is excessive. The Commissioner requests that the Court reduce any fees awarded by 40%.

8

(a) *Duplication of Efforts*

The Commissioner contends that the Plaintiff's attorneys had multiple attorneys working on the case, which resulted in redundant hours that should have been excluded. The law clerk, Sara Samuel, spent 22.25 hours working on the appellate brief and attorneys Frederick Daley and S. Jackson spent 10.75 hours reviewing and discussing her work. The Commissioner criticizes the 15 plus hours that law clerk Samuels spent reading the district court filings, the administrative transcript, and sample briefs. The Commissioner argues that while Attorney Jackson's 10.75 hours related to presenting oral argument in the court of appeals is reasonable, Attorney Daley's 7.5 hours assisting Attorney Jackson's preparation was excessive.

The Plaintiff responds that 22.25 law clerk hours and 10.75 attorney hours to draft an appellate brief is not excessive. She argues that law clerk Samuels was responsible for the draft of the appellate brief and was required to familiarize herself with the facts of the case and the format requirements for appellate briefs. She argues that because law clerk Samuels thoroughly reviewed the record, she drafted the brief in an efficient 6 hours. Attorneys Daley and Jackson spent only 10.75 hours reviewing or discussing Samuels's work, and minimal additional work had to be done. The Plaintiff counters the Commissioner's challenges to the hours spent preparing for oral argument by noting that courts in this circuit have universally recognized that extensive preparation is required for oral argument, especially before the court of appeals. Here, Attorney Daley participated in "moot court sessions" with Attorney Jackson to simulate argument before the court of appeals.

The use of non-attorneys saves money only when their efforts are not duplicated by counsel. *Samuel v. Barnhart*, 316 F. Supp.2d 768, 783 (E.D. Wis. 2004). However, "the attorney who signs a document filed with the court has ultimate responsibility for the document, to the court as well as

9

to the client. Time must necessarily be spent by that attorney carefully reviewing the draft document before he can affix his signature." *Embry v. Barnhart*, 2003 WL 22478769, at *4 (N.D. Ill. Oct. 31, 2003). Moreover, "[m]ost reasonable attorneys would want to become well-acquainted with a new case and to prepare a litigation strategy before delegating it to a law clerk." *Nickola v. Barnhart*, 2004 WL 2713075, at * 1 (W.D. Wis. Nov. 24, 2004). The Court does not find Samuels's time to be unreasonable, nor does it expect that her work, which is billed at a lower rate, would not be reviewed and edited by other attorneys. However, some reductions in the hours expended are appropriate in this case.

The Court clarifies that, contrary to the Plaintiff's assertion, it does not appear that Samuels drafted the appellate brief in 6 hours. Her time entry indicates that she began drafting the procedural history and facts and that she did not log any more time after this September 29, 2003, entry. Moreover, Attorney Daley's time entries include 6 hours for drafting argument on multiple impairments and blurred vision, which was not included in the 10.75 hours of review cited by the Commissioner.[1] Thus, it appears from the time records that Attorney Daley, who the Commissioner recognizes as an "experienced social security practitioner," had significant input into the appellate brief. Given Daley's extensive work, Jackson's time on October 6, 2003, reviewing the final brief, is unnecessary and duplicative. The Court discounts Jackson's 1.50 hours of review.

While Daley drafted the appellate brief, it appears that Jackson drafted the reply brief, and spent more than 24 hours doing so. Attorney Daley's 2.75 hours, on January 6 and 10, 2004, reviewing, discussing, and editing Jackson's work is not recoverable.

---

[1] According to the Plaintiff, this time entry was erroneously dated September 20, 2004, instead of September 20, 2003. Thus, the Commission did not know that it represented attorney time preparing the appellate brief.

The Commissioner does not dispute that Attorney Jackson's time preparing for oral argument was reasonable, but objects to the 7.5 hours that Daley helped him prepare. The Court agrees that Attorney Daley's time should be excluded.

(b) *Errors in Time Records*

The Commissioner contends that the fee request should be reduced because the attorneys did not keep contemporaneous time records, as evidence by Attorney's Daley 1.5 hours "compiling" the firm's time log. The Commissioner states that this is problematic because certain entries suggest that the reconstruction of the hours may not be reliable.

The Plaintiff responds that the Attorney Daley's entry, "Prepared time log and EAJA petition" references his work editing an already existing time log for misspellings, elimination of abbreviations, and exclusion of nonchargeable time, and to draft the EAJA petition. Therefore, the Commissioner's argument regarding contemporaneous time logs is moot. In addition, the Plaintiff asserts that the two typographical errors that the Commissioner's notes in support of problematic entries are not significant and do not affect the final accounting of time.

The Court agrees that fee should not be reduced for failure to keep contemporaneous time records and that the typographical errors were not significant to the fee issue.

**(2)** *Objections to Fees for Specific Tasks*

(a) *Time "Taking Back" Erroneous Statement Made at Oral Argument*

The Commissioner argues that the Plaintiff should not receive fees for 6 hours Attorney Daley spent drafting a letter to correct a misstatement Attorney Jackson made during oral argument.

11

The Plaintiff responds that the entry, for September 20, 2004, which should have been dated September 20, 2003, does not relate to the letter, but to drafting an argument for the opening brief. The Plaintiff contends that no time is billed for the letter.

This Court has no reason to discount the Plaintiff's statement that the time entry was misdated and that no time was billed for drafting the letter. Thus, the 6-hour entry was not an improper billing to take back an erroneous oral argument statement and the Commissioner's argument on this point is moot.

(b) *Extensions of Time*

The Commissioner contends that the Plaintiff should not recover fees for 1.50 hours spent preparing a motion to enlarge time and a request for an extension to file appellate reply brief. The Commissioner cites *Burr v. Bowen*, 782 F. Supp. 1285, 1290 (N.D. Ill. 1992). The Plaintiff responds that *Burr* is distinguishable and that time spent drafting motions for extensions of time is fully compensable. *See Samuel v. Barnhart*, 316 F. Supp.2d 768, 779–80 (E.D. Wis. 2004) (distinguishing *Burr* and stating that "[e]xtensions of time are regularly requested and granted in social security cases in this district, in favor of both the Commissioner and the plaintiff-claimant"); *but see Holland v. Barnhart*, 2004 WL 419871, at *2 (N.D. Ill Feb. 3, 2004) (following *Burr* and finding that it was unreasonable for the plaintiff's attorneys to bill the Commissioner for time spent preparing a motion for extension of time). The Court agrees with the Plaintiff and finds that the time spent by counsel seeking extensions is reasonable and recoverable.

(c) *Clerical Tasks*

The Commissioner objects to time that the Plaintiff's attorneys spent performing purely clerical tasks, such as copying, binding, and filing briefs and preparing routine, non-substantive documents. The Commission points to the following time entries for Attorney James Balanoff, who represented the Plaintiff before the district court: January 8, 2003, filing complaint; July 21, 2003, faxing medical records and copy of brief to Attorney Daley; August 18, 2003, filing notice of appeal; and September 18, 2003, preparing a docketing statement and cover letter. The Commissioner also challenges time that Attorney Jackson spent on October 8, 2003, copying, binding, and delivering the appellate brief to the court of appeals for filing.

The Plaintiff disagrees that the time entries represent purely clerical work. She argues that lawyers customarily file complaints because the service of process must be performed correctly. She also contends that because it is crucial that the notice of appeal be prepared correctly and filed at the correct court, it is normally filed by an attorney and is not a clerical task. The same argument is made for the docketing statement and cover letter. The Plaintiff admits that Attorney Balanoff's July 21, 2003, entry involved faxing, but argues that he had to select the records of the doctor from the file and ensure that the correct records and briefs were sent. Thus, "[w]hile ideally a competent secretary could perform this task, the small firm practitioner must review the file, and does not usually have a staff of clerks and secretaries to assist him." (Pf.'s Reply at 14.) The Plaintiff notes that the actual task of faxing is not time consuming and the task was completed more efficient than if he had explained to a clerical employee what was needed. The Plaintiff also contends that it is not unusual for attorneys in small firms to be involved in assembling briefs, which must conform to the local rules for the appellate court to accept them. Even if the attorney did not assemble each brief,

13

the Plaintiff argues that he would have to review each copy to verify that all pages and required sections were included.

When considering a fee petition, the court should disallow hours expended by counsel on tasks that are easily delegated to non-professional assistance. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999). Such tasks should not even be billed at a paralegal rate. *See Missouri v. Jenkins*, 491 U.S. 274, 287–88 & n.10 (1989). The Court must determine whether the work was sufficiently complex to justify the efforts of an attorney. *Cf. People Who Care*, 90 F.3d 1307, 1315 (7th Cir. 1996) ("The . . . inquiry for requested paralegal fees should be whether the work was sufficiently complex to justify the efforts of a paralegal, as opposed to an employee at the next rung lower on the pay-scale ladder.").

The Court finds that one of the challenged entries contains excludable clerical work. While an attorney may have needed to review the final bound appellate brief, an attorney's skills were not required to copy, bind, and deliver the brief. Thus, the time that Attorney Jackson spent on October 8, 2003, copying, binding, and delivering the appellate brief to the court of appeals for filing is reduced by 2.00 hours, leaving .50 hours for the attorney to review the final product. Attorney Balanoff's work does not appear, in light of the entirety of his entries, to be purely clerical and the Commissioner's objections to his entries are overruled.

**C. Final Calculations**

The Plaintiff is entitled to recover costs in the amount of $262.46 and attorney's fees in the amount of $14,975.32, based on the following calculations:

Law Clerk:         22.25 hours x $95 = $2113.75

2001–02:        22.90 hours x $146.25 = $3349.13

2003:           23.90 hours x $147.50 = $3525.25

2004:           40.25 hours x $148.75 = $5987.19

TOTAL FEES:     $14,975.32

## CONCLUSION

The Plaintiff fee petition is GRANTED in part and DENIED in part. The Plaintiff is awarded fees of $14,975.32 and expenses of $262.46, for a total EAJA fee award of $15,237.78. A separate judgment shall be entered to this effect .

SO ORDERED on July 21, 2005.

                                         s/ Theresa L. Springmann
                                        THERESA L. SPRINGMANN
                                        UNITED STATES DISTRICT COURT